Good morning. May it please the court, my name is Petter Batalden and I represent General Dynamics. This is an interlocutory appeal from an order denying General Dynamics summary judgment on the Boyle government contractor defense. We contend that interlocutory appellate review is appropriate under the collateral order doctrine and we contend that the district court erred in denying summary judgment on the Boyle defense. Well, if we were to find that the district court denied summary judgment on the basis of a disputed issue of material fact and has not denied General Dynamics the opportunity to raise the government contractor defense at trial, why should we review this on an interlocutory order? There are a couple of reasons, Your Honor. The first is that to the extent the district court identified a factual dispute in this case, it was a factual dispute about the merits, about whether a district court didn't make a factual finding relative to the Boyle defense and it's only the Boyle defense that is presented in this appeal. Let me flesh that out in a little bit further detail. All that we know in this case about the cartridge and the accident is for purposes of this appeal that there was a defect. We're assuming that. You cannot infer from the fact of a defect whether Martin Marietta did or did not comply with government assembly specifications. But one doesn't lead to the other. Why do you do that? Take a look at your own expert's testimony, Mr. Chachorovsky. The district court noted that Mr. Chachorovsky testified that absent human error, if the cartridge was manufactured according to specifications, it would not detonate inside the mortar. Your Honor, what that expert and the other expert, Vincent DiRico, were talking about in their depositions was how a mortar cartridge is designed to perform. It's a design issue. We don't have a design claim in this case. There's no claim of design defect here. That's exactly right. There's no claim of design defect in this case. Those experts are not testifying about the particular But he didn't talk about if the cartridge was designed according to specifications. He said if the cartridge was manufactured. Manufacture is a different theory totally from design defect, isn't it? Yes, Your Honor. I don't believe he used the word manufacture. He did use the word manufacture, unless the district court was wrong. The district court characterized that testimony following the plaintiff's approach as an effort to testify or to make statements about the manufacturing process. But there is no expert in this case on either side, plaintiffs or defendant, that testifies about the manufacturing process, the protocols that were employed that the government imposed on Martin Marietta, and so forth. If all you know is that there was a defect in the product, which we're assuming for purposes of appeal, you can't know how that defect occurred, whether it's because of a failure to follow the government protocol, whether it's because the government protocol itself contained an inherent flaw or error, or whether any of the dozen separate government contractors that produced component parts that Martin Marietta used to assemble the cartridge caused the defect. Some of those would defeat the defense that you're seeking, would they not? In other words, the primary one that might defeat the defense would be if the protocols were not followed, right? I mean, if a government contractor says, well, I know the government wants us to do it this way, but we know better, we have a better way to do it, we're just going to do it this other way. No defense, as I understand the law. It's a little difficult area. So why isn't there an issue of fact with respect to whether the defense applies? If the question, if the defense applies to the product rather than the person, then why wouldn't there be an issue of fact here that precludes jurisdiction? Your Honor, the Boyle defense in this context applies to the process, whether there were specific government assembly requirements and whether Martin Marietta followed them. It is entirely compatible for a contractor to comply with the letter of every government specification and for a defective... But you have to show certain things before you're entitled to this protection that you're seeking. It's not the same as sovereign immunity. Just by virtue of the fact that your client is a government contractor, they're not immune from suit. They have to show certain things. And if there are triumphal issues as part of it, you know, I mean, there's a couple of things. You have experts that say that, talk about the manufacturing process. You're expert and the other, Rodriguez is expert. Then you also have a person that was injured but didn't die that said that there was no double loading. And then there's also evidence that we see here that you actually couldn't even produce the records, the, what do you call it, the SOPs or something along the, that you, there's some questions about where the originals are or that would cover the period of time when this may have been manufactured. So why doesn't all of that, that's what the, why doesn't all of that create a triable issue before you even get to this? Because none of those items, Your Honor, taken individually creates a factual dispute. Let's start with the standard operating procedures, the SOPs. Both sides are... Well, don't you have to show that you manufactured according to the plans? Yes, and we did. We submitted affidavits from... Well, isn't, did the district court say that you did? Wasn't there some question about you didn't produce the plans for that particular time, right? You had some before, some after, some copies, lost some originals, whatever, right? The government, which was the producing party here for these specifications, was unable to locate the particular set of standard operating procedures that were in force in 1982 when we started... So why isn't that a problem for you? Because our witness testified, and this is a recipient witness, that the standard operating procedures that were produced and that are in the record are similar or they're the same essentially as those that were in effect that were not able to be located by the Army. That's not a reason to deny summary judgment. We're talking about the same specifications here. Same or similar? Same or similar. Now, we, along with our summary judgment motion, came forward with evidence of full compliance. Our witnesses testified that we fully complied with government manufacturing specifications. Now, that shifted the burden to the plaintiffs to controvert that evidence. They had to come forward with some evidence showing that we didn't comply. But all they've come forward with is the fact of the accident, that the alleged defect in the cartridge. And that's not enough to controvert our evidence of full compliance with manufacturing specifications. Now, Mr. Nixon said that there were three possibilities that would cause the explosion. One was a defect in the cartridge above the subordinator level. The second one was cracks or cavitations or voids in the filler charge. And the third was a possible foreign body in the body of the cartridge. That opinion was objected to on Dobert grounds, Dobert and Kummerow grounds. In the district court, you have abandoned your objection to that evidence on appeal. Why is that evidence not now sufficient to allow a tribal issue of fact as to the presence of a defect in one of those three instances? I'm not of the view that we're entitled to take an interlocutory appeal from the Dobert issue. But even putting that to one side, I don't think it makes any difference because Mr. Nixon didn't offer any testimony that showed that there was noncompliance with government manufacturing. Any of those three alleged factual scenarios would be noncompliance with the manufacturing specifications, would they not? No, Your Honor. If there were a crack in the cartridge through which the gas upon expelling of the mortar would ignite the filler in the cartridge, that would be a defect which would be inconsistent with your specifications, true? No, absolutely not. And this is the critical point, Your Honor. There is no inconsistency there because you can't know why that crack in the cartridge existed. Did it exist because the government's own specifications contained a flaw, an inherent error that meant that every so many cartridges, a defective one would be produced? Or did that exist because Martin Marietta didn't comply with the specifications? Or is that crack attributable to a separate government contractor that produced that part? There's no way to know who introduced any of it. Well, even if a separate contractor had produced that part and produced it ineffectively, the assembler in the stream of commerce becomes liable to the plaintiff. The assembler may have a cross-claim against the manufacturer for ineffective production. But as to the plaintiff, the assembler has product liability, correct? On the merits, Your Honor, yes. But we're talking about the Boyle defense. For Boyle purposes, we have to show that Martin Marietta was required to follow government assembly specifications. Well, and your position is that the Boyle factors have no relationship to the merits. That's right. That's what I hear you saying. They arise from different bodies of evidence. The merits inquiry is essentially a causation inquiry. It's going to be a battle of the experts over whether the cartridge was defective and whether it caused the plaintiff's injuries. On the Boyle defense, we're not talking about causation or defect. We're talking about whether there was a specific protocol that the government directed Martin Marietta to follow and whether it did, in fact, follow it. The only evidence in this record on that point, on the Boyle defense, is our affirmative evidence of full compliance. And we have contemporaneous documentary evidence to support the affidavits of our witnesses. Do you have any other circuits that support your position that this Boyle defense is more akin to sovereign immunity as opposed to a defense? Well, the Second Circuit's decision in the World Trade Center litigation, which we cited in the brief, recognizes the right to an interlocutory appeal in the Boyle context. And that's the most recent of the circuits that have weighed in. Let me ask you sort of a kind of a follow-on to my earlier question. Maybe I'm just still mulling over the same thought. If there is a factual issue, and I know you don't concede that there is, but if there's a factual issue about the application of the Boyle defense altogether, for example, were there protocols followed, then that would preclude summary judgment and it would preclude an appeal. Do you agree with that? I don't agree, Your Honor, because the only justification for precluding interlocutory appellate review in that scenario that you posit is if you borrow and import from the qualified immunity line of cases the doctrine that you limit appellate jurisdiction when there's a factual dispute. Well, it's not just that line of cases, but ordinarily the denial of summary judgment is not appealable, period. That's true. In all contexts, not just qualified immunity, every context. So if, and again, I understand that you don't agree with this, but if there's a factual issue pertaining to the application of the doctrine in the first instance, it's not clear whether it applies or it doesn't apply, why would an appeal lie and why would it even help you if there's a factual issue? Well, it would, what's different is that this is an immunity and an immunity from suit that can't be vindicated if you have to go to trial first in order to appeal. Well, that's your characterization, that it's an immunity from suit, not a defense, right? Well, that's what the U.S. Supreme Court has told us. Well, that's true of qualified immunity, too. Yes. So it doesn't, I mean, it's sort of circular. Well, there's a So what your position would have to be that if there's a factual issue and we don't know whether the defense applies or not, we have to hear the appeal and then say, we don't know if it applies and send it back. No, Your Honor, you'd have to take the appeal on an interlocutory basis and review whether there was, in fact, a factual dispute. That's the point. That's what, that's what we would ask this Court to do if it were to conclude there's a factual dispute. And again, we don't, we don't believe there is. Well, it seems completely circular. I guess the only difference is that in the ordinary qualified immunity context, if the basis for the trial court's decision is a factual issue, we never get to reviewing whether there is, in fact, a factual issue. We take the district court at its word that a factual issue exists. And what you're saying is the only wrinkle here is don't take the district court's word for a factual issue. Look at it yourself to see if there's a factual issue. Right. The other way to characterize it is to say here to the extent there's a factual dispute, it's not material, because the factual dispute identified by the district court goes to the merits, not to the Boyle defense. So there's no impediment to interlocutory appellate review. I'd like to save my last minute for a moment. You may do that. Mr. Brown. I'm Ward Brown. I'm from Liberty, Missouri, which is a suburb outside of Kansas City. And it's a pleasure to honor. Welcome to sunny San Francisco. Thank you very much, Your Honor. Is it cooler here? Quite a bit, yes. I think 98 today in Kansas City. I want to get to the issue that was discussed here a minute ago about jurisdiction        It's not a factual issue. It's not a factual issue. It's not a factual issue. It's not a factual issue. It's not a factual issue. I'm not aware of any other case extending the Boyle concept in finding that a private contractor actually has immunity from suit. That case, the argument made in that case on that, cites the Yearsly case and the Boyle case. After it cites the Stafford Act, which in the congressional history specifically gave the right to an interlocutory appeal. Okay? So that's a little different. But the reason I mention that is because of the United States X. R. L. Ali case from this Court in 2004, the same exact argument was made on Yearsly and Boyle. And this Court said there is no immunity from suit. Okay? The other case is from 2008 in this Court, and for some reason it wasn't cited in either brief, and I apologize for not doing that, and that is the Del Campo v. Kennedy case, 517F3rd, Kennedy. Counsel, would you, after the argument, see the deputy clerk and provide a supplemental citation? She'll have a form for you. I will be happy to. Or if she doesn't, just be sure to give that to opposing counsel and make enough copies for the Court as well. I will, Your Honor. In the Del Campo case, it cited United States X. R. Ali for the very same proposition. So in 2004 and 2008, this Court has said there is no sovereign immunity conferred upon a private contractor. Okay? The only case out there that we've been able to find that even mentions that and applies to that is the Second Circuit case from 2010. Is counsel asking us to extend Boyle? I believe counsel is, because I think the Boyle case, I believe, set up a defense, a fact-intensive defense with three prongs that is much better suited to be determined after a trial on the merits so that we won't have all of these confusing issues regarding what the specifications are. Again, they say they're similar specifications. The vast majority of the specifications that they put in the record are dated after our date. There's no way they were in effect at the time in question. Well, tell me logistically how, if we were to accept your position, how this trial is going to work? Because some of these things are legal determinations. Correct, Your Honor. So what are the, from your perspective, what is the factual determination that has to be made? And as that's resolved, you know, obviously, if on the triable issue, if you can't establish that there was anything wrong, then it's done, right? Correct. But if you establish that there was something wrong, then how's the, is that, the jury's factual determination of that is accepted by the court, and then the court makes the legal determination of the defense? No, Your Honor. I believe it's submitted to the jury unless only one conclusion can be drawn, like any summary judgment or directed verdict standard. And Boyle talks about that, and this Court's case in Snell v. Bell Helicopter talks about that. In terms of it's a fact-intensive, it is submitted to the jury. I assume there would be a jury instruction on the elements. For example, did it conform to the specifications? Assuming that it's appropriate to submit that case to the jury. Well, they tested, you know, let's say they tested how many cartridges and they didn't find a defect, right? They tested 200 and some cartridges and did not. Well, more than that, there was. Well, they fired 10,000, if that's what you're getting at, Judge. Okay. If they'd fired a million, would you be able to show a triable issue if there were no defects in a million? Your Honor. I mean, at what point does this, it's sort of, you're arguing res ipsa and you have your, you know, you're saying that someone there said there wasn't double loading. You have a burden at some point to kind of get this off the mark. So at what point would that not be present? I agree with you. And let me tell you kind of what the evidence is on that. There was a narrowing of the evidence based on the experts. And they said there are three possible causes of this. No others. Because this was a low order detonation, which is at a lower speed. They said the three possible causes are double loading, a defect in the metal body, or high explosive problem, either the, a foreign particle or some sort of cavitation. Those are the only choices in this case. That's what the experts. So that's undisputed. That is undisputed. They want to say on appeal for the first time that there might be some sort of mystery cause out there that could have caused this. We would submit that that would have, would require expert testimony, particularly when the experts on both sides in this case say these are the only possible causes in this case. Our evidence of that is Mr. Nixon, our expert, talks about his opinion about those being the causes. The specifications themselves, no matter if you talk about a process or the equipment, the specifications themselves address these issues. In, on page, third volume of the excerpts on the record, page 296, the high explosive section 3.4 talks about there shall be no cavitations, cracks, excessive voids and those things. It says it right in their specification that they presented to this court. Metal defects are also right in the record as well, that there shall not be any cracks, voids and those other things. So no matter if you talk about a process or you talk about equipment, their specifications talk about that. Our evidence at trial about what the defect is is not based solely on res ipsa. Res ipsa is one of the evidentiary rules that might apply depending on how the evidence comes in. But our theories are based on a strict liability and a negligence. Under Hawaiian law, which I'm not familiar with, a little bit more familiar with California law, can you give a res ipsa locator instruction in a product liability case where there is no negligence claim? I believe you can. Because that's not the law in California. Right. I understand that judgment. I think Hawaii does allow that. I do believe that. I'm not aware of a case where they didn't submit on both negligence and product liability. So that's why I'm hesitant to lock that in 100%. But there are cases that talk about you can't submit it under a strict liability theory under res ipsa. We may or may not do that. That's going to be a trial strategy decision based on how the evidence comes in. And if I had to guess now, we won't. But I don't want to prejudge that because it's going to depend on how the evidence comes in. And one of the things I did want to mention is kind of the reasons behind Boyle. We've talked in the briefs all about this discretionary actions and the government has a discretionary interest in making specifications. Our argument here is that the product did not conform to those specifications. We are not alleging a design defect. We are alleging, Judge, as you said, that it's a manufacturing defect. And we are alleging that they didn't comply or conform to the two sections I just told you about. There are many others in our brief that we talk about. And we have been hamstrung to some degree given all of these. And you disagree with your learned opponent in saying that the second element of Boyle, which is compliance with specifications, there's a tribal issue of fact on the merits, whether there was a defect which is inconsistent with scrupulous compliance with specifications. That's correct. And the issue is a little different given the fact that it's an affirmative defense. In our case, we wouldn't have to even address it, at least in my view. In their case, if they show that there are reasonably precise specifications and they tell us what they really are and they put that before the jury, then we have a duty to come forward and rebut that. And I think we will by going through the things that we do in our brief and the things that I've talked to you about here today. Is there any evidence that Mr. Nixon gives that one of the three causes, the defect in the outer casing, the defect through cavitation or cracking in the casing, the defect through foreign body in the explosive, is more likely than other? Yes. He believes that the metal casing defect is the most likely cause. And the reason he included the high explosive is that he said he cannot rule it out. He doesn't believe that was the cause, but he thinks it's more likely not that it was the metal body defect. And his idea of the causation is that there being a defect in the metal casing, the gases on extrusion of the motor cartridge are of such heat that they penetrate into the explosive and blow the explosive up inside the motor. That's exactly correct, and that's one of the findings that one of the Army investigators made as well that's in the record that was cited below. I want to make another point clear, I think. We talked about Zakharovsky's, in response to my opponent's argument, there was a discussion of the expert Zakharovsky's comments about manufacturing and the defect. Mr. DeRico, their other expert, also talked about that, and I want to make sure the record's clear about that. He agreed that absent human error, that an 81-millimeter shell that prematurely goes into the explosion, is not the cause of the defect.  So there is no double-loading, and that's a different issue in conformance with the specifications. It's my view that that admission or statement from their expert alone would be enough to get us over the hurdle of a summary judgment motion on that point. But we have all kinds of other evidence from Mr. Nixon. The specifications of the shell that prematurely goes into the explosion, is not the cause of the defect. The metal casing or double-loading, those were narrowed down. This is not, you don't come in in a vacuum and think, you know, what's the evidence going to be? It has been narrowed down. The witnesses and the record before the district court was narrowed down to those three causes. And both of their experts conceded that if they're wrong about double-loading, then the other two defects would constitute a non-conforming defect. Both of them were clear about that. That's in our brief as well. I want to talk, this leads into their argument for the first time in their brief about it may have been something else that caused this that nobody's talked about or nobody's identified. They have a theory. They do have a theory that's in the record where the specifications could have been conformed to and this still could have happened. Double-loading. That's what their expert says. They went there with their expert. Now they're trying to go outside of what their expert says. It's rank speculation. There's no expert to support it. There would, I think it would have Dalbert implications. There's all kinds of other things if the Court were to entertain something that's not supported by any of the evidence. Again, just the opposite. Their experts say that they would not conform. And their experts say that the specifications don't allow this to happen. The fact that it blew up in the shell, unless it was double-loading, the specifications don't allow that. All the evidence suggests that if it was made according to the specifications that applied to general dynamics, it would not have blown up in the tube the way it did. And, again, the two, we have two theories about how that happened. We have evidence that's in the record on those two theories. Another point that I think I need to mention is kind of the boil. Well, in some ways, the most important point to, not to you necessarily, but whether we have jurisdiction, you know, whether on this, you know, that's the most important point, because otherwise, I think as Judge Graber pointed out, generally you can't, you know, summary judgments, you can't appeal them. There's just very rare instances, and they're arguing that it's one of those rare instances. And we don't, obviously, we don't believe that the Court has jurisdiction based on the two Ninth Circuit cases that I mentioned. Unless they are the sovereign or sovereign immunities conferred, the Court doesn't have jurisdiction, I believe. And I don't think they get there by citing a Second Circuit case when there are two Ninth Circuit cases already talking about that. And I won't go on. This Court deals with jurisdiction every day, and I realize that. One of the other things I wanted to mention, because I think it's very important, is Boyle talks about these three factors. And this Court in Snell talked about strict adherence to the factors. And there's a reason for strict adherence, and it's very important, I believe. And that's because you want to be very careful before applying this defense. And Snell talks about that. And there's a heavy burden on the defendant to show these things as a matter of law or even at trial. And the reason is because there has to be a significant conflict between the specifications and the government and the state law. It has to be a significant conflict. Okay? And Boyle is there. The three factors of Boyle are there to test that conflict. That's how you test that conflict. And you look at it in this case, within the standard review of the summary judgment, where I get all the reasonable inferences of the evidence and I get the evidence taken in the light most favorable to us. And you also, according to Boyle, compare the specifications to the allegations. And that's what we've tried to do. We've tried to take the specifications as best we could on this record, because there are serious questions about what the specifications are. We've tried to compare those to what our allegations are, the particular features at issue, which is what the law says you look at. Now, counsel, you have exceeded your time. Thank you. Appreciate your time. Thank you for your argument, Mr. Brown. And you do have some rebuttals. I'll run that out. Thank you, Your Honor. I'd like to make four points in response. First, my friend Mr. Brown mentioned that the Allee and Del Campo cases from this Court say that Federal sovereign immunity is not the nature of the Boyle defense. But he neglected to tell you that neither of those cases involved a contractor asserting the Boyle defense. It's dicta. This Court's decision, which is a more recent decision in the Hanford nuclear decision, says point blank, Boyle confers derivative Federal sovereign immunity on contractors. Second, Mr. Brown suggested that the metal casing was the most likely defect in the shell. That casing is not produced by Martin Marietta. That's not it. That doesn't create a tribal issue of fact in our compliance with government specifications if it's a component that we didn't produce. Third, if a defect alone is enough to create a tribal dispute of fact, that's what this Court holds, then it will create a circuit split. With the Fourth Circuit's decision in Clemen and the Fifth Circuit's decision in Bailey, which say as a design case, it wasn't a manufacturing defect case, correct? That's true. But for this purpose, Your Honor, there's no difference because the question is whether any inference arises merely from the fact that there's a defect, whether it has to do with design or manufacturing. It doesn't make a difference. And moreover, if that's the law, then no Boyle claim could ever succeed where there's a manufacturing defect allegation. And we know that's not the case because this Court has now held that Boyle is available to government contractors in manufacturing defect cases. And the fourth and final point I want to make, I would direct the Court to page 289 of the excerpts of record, which is a page from the actual government contract between Martin Marietta and the government. It's a page that talks about quality assurance supervision, and it says that if there are nonconforming cartridges that are manufactured, there will be an analysis or investigation to determine whether it's the fault of the contractor or something else. And if it's the fault of the contractor, then they won't be able to charge the government for their production costs. Now, that means that the very contract itself anticipates that there will be flaws, there will be nonconforming cartridges through no fault of the contractor. That's the point. That's why it's entirely compatible for Martin Marietta to have fully complied with government specifications and for a defective product to have resulted. Thank you, Counsel. Thank you. I appreciate the arguments of both counsel. The case is submitted, and we'll take a break for about 10 minutes.
judges: Graber, Callahan, Bea